### DUTENHOFER *v.* ADIRONDACK RY. CO. *et al.*

*(Supreme Court, General Term, First Department.  May 15, 1891.)*

CORPORATIONS—INSOLVENCY—REORGANIZATION.

> Pending foreclosure of a mortgage of the property and franchises of a railway
> company, an agreement was entered into by its stockholders, bondholders, and
> creditors, with trustees appointed therein, that the trustees should receive the out-
> standing bonds and stock of the company, and issue their own certificates therefor;
> that a new corporation should be organized, to which the property of the insolvent
> company should be conveyed, and which should issue two series of bonds secured
> by mortgages; of which the second should be used in taking up the trustees' cer-
> tificates.  *Held* that, under a provision of the agreement that the certificate holders
> might "at any time, by the vote or assent of a majority in par value of their num-
> ber, modify, amend, or change this agreement, or any provision thereof, or the plan
> herein set forth, in any manner they may deem best for the interest of all concerned,"
> the power of alteration did not extend beyond the creation of the new company
> and the conveyance of the property to it; and a subsequent modification of the
> agreement so as to authorize the issue, instead of a first and a second mortgage
> securing different series of bonds, of one mortgage to secure one series of bonds,
> which should, so far as necessary, be used to retire and satisfy the receivers' certif-
> icates, although assented to by a majority of the certificate holders, was not bind-
> ing on those not assenting.

Appeal from special term, New York county.

Action by Adam Dutenhofer against the Adirondack Railway Company,
William Sutphen, William W. Durant, F. Murray Olyphant, and Edwin
Young.  The defendants the Adirondack Railway Company, F. Murray
Olyphant, and Edwin Young appeal from a judgment for plaintiff rendered
on trial by the court without a jury.

Argued before VAN BRUNT, P. J., and DANIELS, J.

Bristow, Peet, & Opdyke, (*B. H. Bristow* and *David Willcox,* of counsel,)
for appellants.  *John W. Weed,* (*Richard M. Henry,* of counsel,) for respond-
ent.

DANIELS, J.  The plaintiff was the owner of 20 bonds, of $1,000 each,
which had been issued by the Adirondack Company, and secured by a mort-
gage on its railroad lands, privileges, and franchises.  The company made
default in the performance of the conditions of the mortgage, and a foreclos-
ure was commenced by the trustee for the benefit of the persons holding the
bonds secured by it.  On the 30th of April, 1880, and after the foreclosure
suit had been commenced, an agreement was entered into between William
W. Durant and William Sutphen of the one part, and the bondholders, stock-
holders, and creditors of the company of the other part, by which these two
persons were made trustees of the other parties, with power to do what should
be necessary for the promotion of their interests.  In the execution of their
powers they were to and did receive the outstanding bonds and stock of the
company, and issued their own certificates for them, by which the persons
receiving them became entitled to receive certain amounts of the stock and
bonds of a new corporation to be formed, after the sale of the property of the
company then included in the foreclosure action.  The plaintiff surrendered
his bonds and stock to the two trustees, and received the certificates for stock
and bonds in the new company to which he became entitled.  Judgment was
afterwards recovered in the foreclosure suit, and the trustees under this agree-
ment purchased the property of the Adirondack Company for the benefit of

the stockholders, creditors, and bondholders of that company, and it was conveyed to them in October, 1881. They, with their associates, incorporated the Adirondack Railway Company, to which, on the 24th of November, 1882, they conveyed the property purchased by them at the foreclosure sale. By the agreement which was first made the corporation which was to be, and was in fact, formed, was to execute two mortgages,—the first to secure the sum of $4,000,000, to defray the expenses of constructing and equipping a railroad from Saratoga Springs to a point in St. Lawrence county on the St. Lawrence river; the second to secure the sum of $1,500,000 of bonds bearing interest at the rate of 6 per cent. These second mortgage bonds the new corporation was to deliver to the trustees nominated in the agreement, who became obligated to "forthwith pay off, retire, and cancel their said certificates, and shall pay, satisfy, and discharge all sums advanced to protect the rights and interests of the parties of the second part, and of the said certificate holders, and their own proper fees, charges, and expenses, all according to the terms and provisions of this agreement; and thereafter, and with all convenient speed, they shall retransfer and deliver to said successor corporation all of the said second mortgage bonds and new stock, not required or used for the purposes aforesaid, and shall adjust all the claims in their hands by transfer or cancellation, as the case may require, and thereupon they shall be fully discharged from all liability under this agreement."

Neither of these mortgages was executed, nor was either of the series of bonds made which they were to secure; and as the plaintiff and others similarly situated with him were to have received certain proportions of the second mortgage bonds in satisfaction of those issued by the Adirondack Company, and surrendered by them under the agreement to the trustees, he brought this action to secure the performance of that part of the agreement, for the benefit of himself as well as others having the same cause of the complaint. The action was resisted on the ground that more than a majority of the holders in amount of the certificates issued by the trustees, under their agreement with the stockholders, bondholders, and creditors, had so changed and modified that agreement, by their action taken at different times upon it, that they had dispensed with the execution of the first and second mortgages, and the issuing of the bonds to be thereby secured, and had agreed to and authorized the execution of a mortgage in the sum of $2,000,000 to secure a series of bonds bearing interest at the rate of 4 per cent., which should, so far as that became necessary, be used to retire and satisfy the trustees' certificates, which by the original agreement were to have been exchanged for the second mortgage bonds of the new company. This change was not made by the action taken by the holders of the certificates at one time. But it resulted from a succession of meetings, commencing in October, 1886, and held in 1887, 1888, 1889, and finally consummated in 1890. It was then agreed, in the manner already stated, that the company should make but one mortgage, which should secure a series of bonds amounting to no more than $2,000,000; and that there should be delivered, to the persons who had been selected and appointed the successors of the two trustees named in the agreement, "such number of said first mortgage bonds, and such additional amount of stock, if any, as may be necessary to carry out the terms and provisions hereof, and of such agreement as modified hereby. Thereupon the said trustees shall forthwith pay off, retire, and cancel the certificates heretofore issued pursuant to said agreement of April 30, 1880, by the trustees thereunder, and which by their terms are redeemable and payable in second mortgage bonds of the successor corporation. The said certificates shall be paid off, retired, and canceled by issuing and delivering to each of the holders thereof such first mortgage bonds to the amount of 50 per cent. of the certificates held by each of them, respectively, and to each of such certificate holders stock of the said successor corporation, the Adirondack Railway Company, to the amount of 50 per cent.

of the certificates held by each of them, respectively. The remainder of said first mortgage bonds, and their proceeds, shall be used by the said Adirondack Railway Company for the purpose of completing, constructing, and equipping the said railroad from Saratoga Springs, N. Y., to Ogdensburg, N. Y., or to some other point on the St. Lawrence river, in the county of St. Lawrence, and in protecting and developing the property of the company, or for any and all other corporate purposes which the said railway company may deem proper and expedient." The changes resulting in this final agreement were agreed upon without the assent of the plaintiff. But it was believed by the majority, acting in this manner, that they had been empowered to bind him, as well as the others, in the minority withholding their assent, under the tenth article of the agreement to which the holders of the bonds of the Adirondack Company had become parties. By this article it was agreed that "the said certificate holders may at any time, by the vote or assent of a majority in par value of their number, modify, amend, or change this agreement, or any provision thereof, or the plan herein set forth, in any manner they may deem best for the interest of all concerned." But, while the language of this article is broad and general, it will not justify so extended a construction. Its design, as well as that of the entire agreement, was to empower the trustees named in it, and their successors, to obtain possession of the bonds and stock of the Adirondack Company, and issue their own certificates therefor, and to mature and perfect a plan for the satisfaction and retirement of the certificates, through the organization of another corporation, to which the property of the insolvent company should be conveyed, and by which a series of second mortgage bonds should be issued, amounting to the sum of $1,500,-000. The plan was intended to be so far carried out by the newly-organized company that it should provide the bonds to be used in taking up the trustees' certificates; and that was made subject to alteration by a majority in value of the holders of the certificates. But that power of alteration could not, in the nature of the enterprise to be promoted, extend beyond the creation of the company which was to issue the bonds and the conveyance of the property to it; for then its rights and obligations became fixed, and beyond the control of this mere majority. It was the paramount design of the agreement that the property purchased by the trustees, when it was conveyed to the company, should pass into its own control, subject only to the restraints and qualifications at that time created and existing. That was to be, as it in fact was, the final object to be attained in the conveyance of the property by the trustees; and when it was secured the power of the holders of a majority of the certificates to change the situation ceased to exist. What remained to the trustees then was no more than to receive the second mortgage bonds and stock of the company, and exchange the bonds and the stock for their own certificates; and this understanding of the effect of the agreement is supported by the deed which the trustees named in it executed and delivered to the company which they and their associates formed. That was executed on the 24th of November, 1882, eight years, nearly, before the final change, now relied upon by way of defense, was made under the sanction of a majority of the holders of the trustees' certificates. This deed was absolute in form, conveying an indefeasible title to the property obtained by the trustees under the foreclosure sale, to the company afterwards created. The company then became bound to issue these second mortgage bonds, as that had been provided for in the agreement, which was made a part of its own articles of incorporation. The nature of what was done was such as to create that obligation, and thereby to provide for the satisfaction and retirement of the trustees' certificates; and that obligation a mere majority of their holders did not afterwards have the power to change. *Frothingham* v. *Barney*, 6 Hun, 366; *Post* v. *Simmons*, 1 N. Y. Supp. 572. While it is true that the language of the tenth article of the agreement is very broad, it is more consistent with

the construction which should be given to it that its power must be exercised before the conveyance of the property to the company than that it shall survive and extend beyond that event, and be employed through an indefinite period afterwards. The latter would be far too loose to warrant its adoption; and as much as that is required to support and sanction this action of the majority of the holders of the certificates. It is as to the right to the bonds alone that this controversy has arisen, for the shares of stock have been delivered as that was fixed by the agreement; and the plaintiff appears to be entitled to his proportion of these bonds. But the fact is proved that over 70 per cent. of the holders of the certificates, having the same right as the plaintiff to receive second mortgage bonds, have consented to receive, in lieu of them, their proportionate shares of the two-million mortgage bonds, and the railroad company has consented to that substitution. They cannot now be obliged to receive second mortgage bonds of the series mentioned in the agreement. As to themselves, they possessed this power of modification; and by the concurrence and acceptance of the railroad company it has so far been made. The plaintiff cannot insist that they shall receive the second mortgage bonds in contravention of their own agreement; and the agreement for their issue and security by a second mortgage can no longer be specifically performed. In this condition of the affairs of the parties, a specific performance has become impracticable; and all that the court can do is to provide an equivalent to the plaintiff of that performance, by giving him the value of the bonds he is entitled to receive. That can be done by modifying the judgment so far as to direct a reference to ascertain that value, and that modification should be made; and, as so modified, the judgment should be affirmed, without costs of the appeal to either party.

VAN BRUNT, P. J. I think the judgment should be affirmed. I concur, with hesitation, in its modification.